## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN OVERSIGHT,<br>1030 15th Street NW, B255<br>Washington, DC 20005<br><br>*Plaintiff,*<br><br>v.<br><br>INTERNAL REVENUE SERVICE,<br>1111 Constitution Avenue NW<br>Washington, DC 20224<br><br>U.S. DEPARTMENT OF THE TREASURY,<br>1500 Pennsylvania Avenue NW<br>Washington, DC 20220<br><br>and<br><br>U.S. DEPARTMENT OF EDUCATION,<br>400 Maryland Avenue SW<br>Washington, DC 20202.<br><br>*Defendants.* | Case No. 25-cv-1585 |

## **COMPLAINT**

1.     Plaintiff American Oversight brings this action against the Internal Revenue Service, U.S. Department of the Treasury, and U.S. Department of Education under the Freedom of Information Act, 5 U.S.C. § 552 (FOIA), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel compliance with the requirements of FOIA.

2.     Since January 20, 2025, President Trump and his administration have weaponized federal government agencies and authorities to punish, intimidate, and retaliate against

individuals, corporations, nonprofits, educational institutions, and others that express opposition to government policy or otherwise spark President Trump's ire. Examples include (but are not limited to) threats to arrest Members of Congress for conducting oversight of government facilities;[1] executive orders and retaliatory actions targeting law firms that worked on government investigations or represented President Trump's political opponents;[2] revocation of critics' security clearances;[3] cancellation of grants to universities unless institutions agree to appoint faculty and administrators more congenial to Trump's political views;[4] and an executive order requiring each federal agency to "identify up to nine potential civil compliance investigations of publicly traded corporations, large non-profit corporations or associations, foundations . . . [s]tate and local bar and medical associations, and institutions of higher

---

[1] *See* Alexandra Marquez, *DHS Spokesperson Threatens Arrests of House Democrats Who Were at N.J. ICE Facility*, NBC News (May 10, 2025, 4:59 PM), https://www.nbcnews.com/politics/politics-news/dhs-spokesperson-threatens-arrests-house-democrats-nj-ice-facility-rcna206052.

[2] Only those targeted firms that have agreed to supply free legal services to Trump's allies have avoided retaliatory measures. *See, e.g.*, Eric Tucker, *Trump Reaches Deals With 5 Law Firms, Allowing Them to Avoid Prospect of Punishing Executive Orders* (April 11, 2025), https://apnews.com/article/trump-law-firms-executive-order-fe8f38a61cf77c5bb6add1315f5f96f1; Scott Pelley, *Trump Presidential Orders Target Law Firms. Here's How Some Lawyers Say That Threatens the Rule of Law.*, CBS News (May 4, 2025, 7:00 PM), https://www.cbsnews.com/news/trump-orders-target-law-firms-some-lawyers-say-that-threatens-rule-of-law-60-minutes-transcript/. American Oversight joined more than 20 other nonprofit organizations in filing an amicus brief in support of law firms' challenges to the executive orders targeting them, explaining how those orders threaten their First Amendment rights of free speech and to petition the government for redress of grievances. *See* American Oversight, *Trump's Political Targeting of the Legal Profession is an Attack on the First Amendment* (Apr. 18, 2025), https://americanoversight.org/trumps-political-targeting-of-the-legal-profession-is-an-attack-on-free-speech/.

[3] *See, e.g.*, Rebecca Rosman, *Trump Revokes Classified Access for Joe Biden, Hillary Clinton and Others*, NPR (March 22, 2025, 2:28 PM), https://www.npr.org/2025/03/22/nx-s1-5337218/trump-revokes-security-clearances-biden-clinton.

[4] *See, e.g.*, Michael C. Bender & Alan Blinder, *Trump Administration Cuts Additional $450 Million in Grants to Harvard*, N.Y. Times (May 13, 2025), https://www.nytimes.com/2025/05/13/us/politics/trump-harvard-grants-450-million.html.

education with endowments over 1 billion dollars" as part of a plan to "deter DEI programs or principles."[5]

3.      This case seeks public records expected to shed light on a troubling abuse of power: President Trump's apparent unlawful interference in directing the Internal Revenue Service to revoke Harvard University's tax-exempt status under Section 501(c)(3) of the Internal Revenue Code, in retaliation for the university's refusal to comply with a list of improper demands from his administration. More broadly, this case reflects a deepening threat to civil society posed by the Trump administration's escalating pattern of weaponizing the levers of government against those who dissent—through politically motivated investigations, retaliatory audits, criminal prosecutions, and attempts to revoke tax-exempt status from organizations, like Plaintiff American Oversight, that have exercised their constitutionally protected right to criticize the president's actions or oppose his unlawful policies. The administration's actions stand as a bellwether in an increasingly aggressive campaign against nonprofits, educational institutions, and other entities committed to public accountability and the common good—a campaign that, if left unchecked, threatens to erode core democratic safeguards and chill the essential work of institutions serving the public interest.[6]

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201, and 2202.

---

[5] Exec. Order No. 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, 90 Fed. Reg. 8633 (Jan. 21, 2025), *available at* https://www.federalregister.gov/documents/2025/01/31/2025-02097/ending-illegal-discrimination-and-restoring-merit-based-opportunity.

[6] Communications and other records reflecting improper political interference at IRS are not exempt and cannot be withheld under FOIA, regardless of whether certain information related to Harvard and other entities' tax status and filings may be confidential under 26 U.S.C. § 6103.

5.      Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

6.      Because Defendants have failed to comply with the applicable time-limit provisions of FOIA, American Oversight is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and is now entitled to judicial action enjoining Defendants from continuing to withhold agency records and ordering the production of agency records improperly withheld.

## **PARTIES**

7.      Plaintiff American Oversight is a nonpartisan, non-profit section 501(c)(3) organization primarily engaged in disseminating information to the public. American Oversight is committed to the promotion of transparency in government, the education of the public about government activities, and ensuring the accountability of government officials. Through research and requests for public records under FOIA, American Oversight uses the information it gathers, and its analysis of that information, to educate the public about the activities and operations of the federal government through reports, published analyses, press releases, and other media. The organization is incorporated under the laws of the District of Columbia.

8.      Defendant Internal Revenue Service ("IRS") is a bureau of the U.S. Department of the Treasury and is headquartered in Washington, DC. IRS is an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). IRS has possession, custody, and control of records that American Oversight seeks.

9.      Defendant U.S. Department of the Treasury ("Treasury") is a department of the executive branch of the U.S. government headquartered in Washington, DC, and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). Treasury—through its

component Internal Revenue Service—has possession, custody, and control of records that American Oversight seeks.

10.     Defendant U.S. Department of Education ("Education") is a department of the executive branch of the U.S. government headquartered in Washington, DC, and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). Education has possession, custody, and control of records that American Oversight seeks.

## STATEMENT OF FACTS

***Attacks on Harvard University***

11.     On March 31, 2025, Education, along with the Department of Health and Human Services and the General Services Administration, announced a "comprehensive review of federal contracts and grants at Harvard University and its affiliates."[7]

12.     On April 11, 2025, Trump Administration officials sent Harvard University a letter laying out specific changes Harvard was required to make to its operations in order to maintain federal funding.[8] These proposed changes included preventing the admission of students "hostile to [] American values," requiring "[v]iewpoint [d]iversity in [a]dmissions and [h]iring," and the immediate cessation of "all diversity, equity, and inclusion (DEI) programs, offices, committees, positions, and initiatives."[9]

---

[7] *Press Release: HHS, ED, and GSA Initiate Federal Contract and Grant Review of Harvard University* (March 31, 2025), https://www.gsa.gov/about-us/newsroom/news-releases/hhs-ed-and-gsa-initiate-federal-contract-and-grant-review-of-harvard-universit-03312025.
[8] Letter from Josh Gruenbaum, Sean R. Keveney & Thomas E. Wheeler to Dr. Alan M. Garber & Penny Pritzker (Apr. 11, 2025), https://www.harvard.edu/research-funding/wp-content/uploads/sites/16/2025/04/Letter-Sent-to-Harvard-2025-04-11.pdf.
[9] *Id.*

13.    On April 14, 2025, Harvard, through its legal counsel, sent a reply declining to agree to any of the Trump Administration's specific demands in exchange for federal funding for research.[10]

14.    On April 15, 2025, Trump posted on the TruthSocial social media network: "Perhaps Harvard should lose its Tax Exempt [sic] Status and be Taxed as a Political Entity if it keeps pushing political, ideological, and terrorist inspired/supporting 'Sickness?' Remember, Tax Exempt [sic] Status is totally contingent on acting in the PUBLIC INTEREST!"[11]

15.    After Harvard rejected the government's demands, the Trump Administration reportedly asked IRS to begin the process of revoking Harvard's tax-exempt status.[12]

16.    On April 17, 2025, American Oversight submitted FOIA requests to IRS and Education seeking records related to potential political interference into IRS's operations, including records that could shed light on improper interference concerning Harvard's tax-exempt status or similar threats to other civil society organizations.

17.    On May 2, 2025, Trump posted to TruthSocial: "We are going to be taking away Harvard's Tax Exempt [sic] Status. It's what they deserve!"[13]

---

[10] Letter from William A. Burck & Robert K. Hur to Josh Gruenbaum, Sean R. Keveney & Thomas E. Wheeler (Apr. 14, 2025), https://www.harvard.edu/research-funding/wp-content/uploads/sites/16/2025/04/Harvard-Response-2025-04-14.pdf.

[11] Donald Trump (@RealDonaldTrump), TruthSocial (Apr. 15, 2025, 10:09 AM), https://truthsocial.com/@realDonaldTrump/posts/114342374504628520.

[12] Brian Schwartz & Douglas Belkin, *Trump Administration Asks IRS to Start Process to Revoke Harvard's Tax-Exempt Status,* Wall Street J. (Apr. 16, 2025), https://www.wsj.com/us-news/education/trump-administration-asks-irs-to-start-process-to-revoke-harvards-tax-exempt-status-2a1c93cf?mod=article_inline.

[13] Donald Trump (@RealDonaldTrump), TruthSocial (May 2, 2025, 7:25 AM), https://truthsocial.com/@realDonaldTrump/posts/114437989795464761.

*Attacks on Civil Society and Nonprofits*

18.    Reportedly pursuant to directives from Trump Administration officials, IRS lawyers are exploring rule changes that would make it easier to deny tax-exempt status to nonprofit organizations.[14]

19.    Under Section 7217 of the Internal Revenue Code, it is unlawful for "the President, the Vice President, any employee of the executive office of the President, [or] any employee of the executive office of the Vice President" to "request, directly or indirectly, any officer or employee of the Internal Revenue Service to conduct or terminate an audit or other investigation of any particular taxpayer with respect to the tax liability of such taxpayer." 26 U.S.C. §§ 7217(a), (e)(1).

20.    Accordingly, records demonstrating whether such a request took place would shed light on potential unlawful conduct connected to IRS's operations, regardless of whether the agency ultimately undertook any such investigation or audit.

21.    One IRS official, Gary Shapley, reportedly "said in at least one meeting that he's giving priority to investigating the tax-exempt status of a select group of nonprofit organizations."[15]

22.    Trump officials outside IRS reportedly "have also had ongoing conversations about how to potentially target nonprofits' tax-exempt status and endowments for months."[16]

---

[14] Brian Schwartz et al., *Trump Officials Explore Ways of Challenging Tax-Exempt Status of Nonprofits*, Wall Street J. (May 3, 2025, 5:30 AM), https://www.wsj.com/politics/policy/trump-officials-explore-ways-of-challenging-tax-exempt-status-of-nonprofits-94ff0c6e?st=pdf8Gm&reflink=desktopwebshare_permalink.

[15] Schwartz et al., *supra* note 14.

[16] *Id.*; *see also* Jennifer A. Dlouhy & Akshat Rathi, *Trump Officials Weigh Earth Day Move Against Green Groups*, Bloomberg (Apr. 17, 2025, 8:57 PM), https://www.bloomberg.com/news/articles/2025-04-18/trump-officials-weigh-earth-day-move-against-green-groups; Clare Savage & Alexandra Olson, *Trump's Anti-DEI Battle Threatens*

23.    In sum, the Trump Administration has demonstrated an eagerness to abuse its power to pursue politically-motivated investigations of and adverse actions against those who criticize the president's actions, resist his unlawful agenda, or otherwise draw Trump's ire— whether they be universities, law firms, or nonprofits that enforce the public's right to government records.

24.    American Oversight therefore submitted the following expedited FOIA requests to IRS and Education.

*IRS FOIA*

25.    On April 17, American Oversight submitted a FOIA request to IRS (Ex. A, internal tracking number TREAS-IRS-25-1129) seeking the following records on an expedited basis:

1.    All records reflecting communications (including emails, email attachments, text messages, messages on messaging platforms (such as Signal, Slack, GChat, Google Hangouts, Lync, Skype, WhatsApp, Wickr, or Mattermost), telephone call logs, calendar invitations, calendar entries, meeting notices, meeting agendas, informational material, draft legislation, talking points, any handwritten or electronic notes taken during any oral communications, summaries of any oral communications, or other materials) <u>between</u> (a) any of the officials listed below — and/or anyone communicating on their behalf, such as a chief of staff, secretary, assistant, adviser, or scheduler — and (b) anyone in the White House Office (including email communications with email addresses ending in @who.eop.gov and phone logs reflecting calls with numbers beginning (202) 456-xxxx).

<u>Officials</u>:
i.    Melanie Krause, former Acting Commissioner
ii.    Gary Shapley, Acting Commissioner
iii.    Anyone serving in the role of Deputy Commissioner

---

*Nonprofits Trying to Fill Critical Labor Gaps*, Assoc. Press (May 12, 2025), https://apnews.com/article/dei-women-trades-construction-trump-chicago-058eb023e6d176f023886332fb0a5745 ("In his 2026 fiscal year budget request, Trump pledged to . . . eliminate funding to 'progressive non-profits' that focus on DEI.").

    iv.    Edward Killen, Commissioner, Tax Exempt & Government Entities Division, and Acting Chief Tax Compliance Officer

    v.    Robert Malone, Director, Exempt Organizations and Government Entities

**For part one of this request, please provide all responsive records from April 14, 2025, through the date the search is conducted.**

2.  **All email communications** (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) **and text messages** (including complete text message threads or conversations) **or messages on messaging platforms** (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, Wickr, Mattermost, or Parler) <u>sent</u> by any of the officials listed above in part one of this request — and/or anyone communicating on their behalf, such as a chief of staff, secretary, assistant, adviser, or scheduler — <u>and</u> containing "Harvard" as a key term.

In an effort to accommodate your agency and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part two of this request to emails, text messages, and messages on messaging platforms <u>sent</u> by any of the listed officials, and/or anyone communicating on their behalf, such as an assistant, chief of staff, and/or secretary.

To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means that both an official's response to an email and the initial received message are responsive to this request and should be produced.

For text messages or messages on other messaging platforms, American Oversight requests that full text message threads/conversations be produced. For example, if an official sent a text message containing any of the key terms listed above, the complete thread/conversation for 24 hours before and after the key term appears should be produced, and not just the message containing the key term.

**For part two of this request, please provide all responsive records from March 10, 2025, through the date the search is conducted.**

3. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) <u>between</u> (a) any of the officials listed above in part one of this request — and/or anyone communicating on their behalf, such as a chief of staff, secretary, assistant, adviser, or scheduler — <u>and</u> (b) anyone communicating from the U.S. Department of Education (including email communications from email addresses <u>ending in</u> @ed.gov).

   **For part three of this request, please provide all responsive records from April 14, 2025, through the date the search is conducted.**

4. All records reflecting guidance — including directives, instructions, memoranda, informal email guidance, and/or any other formal or informal guidance — created by, provided to, or otherwise in your possession regarding Harvard University, including, but not limited to, guidance regarding the investigation of Harvard, freezing of Harvard's federal funding, revocation of Harvard's tax-exempt status, and/or any other action regarding Harvard.

   **For part four of this request, please provide all responsive records from March 10, 2025, through the date the search is conducted.**

5. All records relied upon in the decision to revoke Harvard University's tax-exempt status.

   **For part five of this request, please provide all responsive records from March 10, 2025, through the date the search is conducted.**

6. All records reflecting any investigation into Harvard University conducted by the Internal Revenue Service since January 20, 2025.

   **For part six of this request, please provide all responsive records from January 20, 2025, through the date the search is conducted.**

26.     That same day, IRS acknowledged receipt of the request and assigned the request

tracking number 2025-13088.

27.     On April 22, 2025, IRS again acknowledged receipt of the request and stated that

its initial estimated date of completion for the request was May 15, 2025. IRS also granted

American Oversight's request for expedited processing.

28.     On May 12, 2025, counsel for American Oversight spoke to the Disclosure

caseworker assigned to this request by telephone. The IRS Disclosure caseworker relayed that

IRS would not have a response by May 15, 2025, and would be seeking an extension of time to

respond to American Oversight's FOIA request.

29.     On May 13, 2025, counsel for American Oversight sent an email to the IRS

Disclosure caseworker inquiring about the status of further correspondence regarding this

expedited request, as discussed by telephone. Ex. B.

30.     Later that day, the IRS Disclosure caseworker responded by email, saying "I just

sent the Statutory Extension Letter today. I will endeavor to provide (on a rolling basis)

completed productions as soon as possible." Ex. B.

31.     On May 13, 2025, IRS sent a letter to American Oversight by email stating:

> We are unable to provide the information you requested by May 15, 2025, which
> is the 20 business-day period required by law for us to respond. In certain
> circumstances, the FOIA allows for an additional 10-day statutory extension. We
> need additional time to search for and, to the extent that records exist, collect the
> requested records from other locations. As part of this extension, the statutory
> response date will be extended to May 30, 2025.
> Unfortunately, we will still be unable to respond to you by the extended statutory
> response date. If we are unable to complete your request by July 14, 2025, we will
> notify you in writing.

Ex. C.

32.     American Oversight understood IRS's reference to "other locations" to be

intended to trigger the "unusual circumstances" described by 5 U.S.C. § 552(a)(6)(B)(iii)(I)—

i.e., the need to search "field facilities or other establishments that are separate from the office

processing the request"—which would permit a 10-day extension for issuance of the agency's requisite "determination" and/or production of all responsive records.

33.     Therefore, American Oversight replied to the Statutory Extension Letter by email on May 13 stating:

> Your office states that it is invoking a "10-day statutory extension" to May 30, 2025, because you "need additional time to search for, and, to the extent that records exist, collect requested records from other locations." FOIA allows a requestor to "limit the scope of the request so that it may be processed within" the original time limit. 5 U.S.C. § 552(a)(6)(B)(ii). Because the requested information is urgently needed to inform the public about actual or alleged government activity, American Oversight will agree to limit this request to <u>exclude</u> "records from other locations," i.e., "field facilities or other establishments that are separate from the office processing the request." 5 U.S.C. § 552(a)(6)(B)(iii)(I). That modification eliminates the permissible circumstances relied upon to extend the IRS's response date to May 30, so we expect to receive responsive records by the original May 15 response date.
>
> In addition, again because of the urgency of this information, we can agree to further limit our request to only parts 1, 2, and 5. Part 1 seeks records from April 14, 2025 "through the date the search is conducted," and parts 2 and 5 seek records from March 10, 2025 "through the date the search is conducted." Based on the above-quoted language from your May 13th letter, no search has yet been conducted. Thus, the search cutoff for all three parts of our request should not be April 17, 2025 (the date the request was received) as your May 13 letter states, but the actual date the search starts.
>
> Ex. B.

34.     On May 14, 2025, IRS responded by email that American Oversight had "misunderstood the language . . . 'records from other locations'" in the May 13 Statutory Exemption Letter, stating:

> The usual practice is that the Disclosure Office procures the requested records (from the custodian of records in other locations/business units of the agency). We did initiate searches (and we continued to process) all portions of your request.

*See* Ex. B.

35.     IRS's May 14 response indicates there actually were no "unusual circumstances" justifying a "statutory extension" of the deadline by which to either produce responsive records or, at a minimum, notify American Oversight of the agency's "determination" of the records it will produce and any statutory exemptions it is claiming as to withholdings as the FOIA requires.

36.     Defendant IRS agreed to narrow the scope of the request to parts 1, 2, and 5, Ex. B, but did not provide an updated date by which the expedited processing of responsive records would be completed and a response would be issued including a production of nonexempt records and statutory reasons for any withholdings.

37.     American Oversight has received no further communication from IRS regarding its FOIA request.

*Education FOIA*

38.     On April 17, American Oversight submitted a FOIA request to Education (Ex. D, internal tracking number ED-25-1130) seeking the following records on an expedited basis:

1. All records reflecting communications (including emails, email attachments, text messages, messages on messaging platforms (such as Signal, Slack, GChat, Google Hangouts, Lync, Skype, WhatsApp, Wickr, or Mattermost), telephone call logs, calendar invitations, calendar entries, meeting notices, meeting agendas, informational material, draft legislation, talking points, any handwritten or electronic notes taken during any oral communications, summaries of any oral communications, or other materials) between (a) any of the officials listed below — and/or anyone communicating on their behalf, such as a chief of staff, secretary, assistant, adviser, or scheduler — and (b) anyone in the White House Office (including email communications with email addresses ending in @who.eop.gov and phone logs reflecting calls with numbers beginning (202) 456-xxxx).

    Officials:
    i.     Linda McMahon, Secretary of Education

    ii.      James Bergeron, Under Secretary
    iii.     Rachel Oglesby, Chief of Staff
    iv.    Chase Forrester, Deputy Chief of Staff for Operations
    v.     Stephen Warzoha, White House Liaison
    vi.    Craig Trainor, Acting Assistant Secretary, Office for Civil Rights

**For part one of this request, please provide all responsive records from April 14, 2025, through the date the search is conducted.**

2. **All email communications** (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) **and text messages** (including complete text message threads or conversations) **or messages on messaging platforms** (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, Wickr, Mattermost, or Parler) <u>sent</u> by any of the officials listed above in part one of this request — and/or anyone communicating on their behalf, such as a chief of staff, secretary, assistant, adviser, or scheduler — <u>and</u> containing any of the following key terms.

    <u>Key Terms</u>:
    i.      Harvard
    ii.     tax-exempt
    iii.    "tax exempt"
    iv.    "tax status"
    v.     "exempt status"

In an effort to accommodate your agency and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part two of this request to emails, text messages, and messages on messaging platforms <u>sent</u> by any of the listed officials, and/or anyone communicating on their behalf, such as an assistant, chief of staff, and/or secretary.

To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means that both an official's response to an email and the initial received message are responsive to this request and should be produced.

For text messages or messages on other messaging platforms, American Oversight requests that full text message threads/conversations be produced. For example, if an official sent

14

a text message containing any of the key terms listed above, the complete thread/conversation for 24 hours before and after the key term appears should be produced, and not just the message containing the key term.

**For part two of this request, please provide all responsive records from March 10, 2025, through the date the search is conducted.**

3. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) between (a) any of the officials listed above in part one of this request — and/or anyone communicating on their behalf, such as a chief of staff, secretary, assistant, adviser, or scheduler — and (b) anyone communicating from the Internal Revenue Service (including email communications from email addresses ending in @irs.gov).

**For part three of this request, please provide all responsive records from April 14, 2025, through the date the search is conducted.**

4. All records reflecting guidance — including directives, instructions, memoranda, informal email guidance, and/or any other formal or informal guidance — created by, provided to, or otherwise in your possession regarding Harvard University, including, but not limited to, guidance regarding the investigation of Harvard, freezing of Harvard's federal funding, revocation of Harvard's tax-exempt status, and/or any other action regarding Harvard.

**For part four of this request, please provide all responsive records from March 10, 2025, through the date the search is conducted.**

5. Records sufficient to identify all alleged violations of civil rights and/or Title VI that the Department of Education identified Harvard University to have committed. American Oversight would accept as responsive to part four of this request a list of the violations in question.

**For part five of this request, please provide all responsive records from March 10, 2025, through the date the search is conducted.**

6. All records relied upon in the decision to rescind and/or freeze Harvard University's federal funding.

**For part six of this request, please provide all responsive records from March 10, 2025, through the date the search is conducted.**

7. All records reflecting any investigation into Harvard University conducted by the Department of Education, including the Office of Civil Rights**,** since January 20, 2025.

   **For part seven of this request, please provide all responsive records from January 20, 2025, through the date the search is conducted.**

39.     American Oversight asked that this request be processed on an expedited basis, and its request included the certifications required by 5 U.S.C. § 552(a)(6)(E)(1) and 34 C.F.R. § 5.21(i)(2).

40.     As American Oversight certified in its request for expedited processing, records related to IRS's plans to rescind Harvard's tax-exempt status are urgently needed to inform the public, and American Oversight is primarily engaged in disseminating information to the public.

41.     On April 18, 2025, Education acknowledged receipt of the request and assigned the request tracking number 25-03381-F. Education also denied American Oversight's request for expedited processing.

42.     American Oversight has received no further communication from Education regarding its FOIA request.

*Exhaustion of Administrative Remedies*

43.     As of the date of this Complaint, the Defendants have failed to either (a) notify American Oversight of any determination regarding its FOIA requests, including the scope of any responsive records the agency intends to produce or withhold and the reasons for any withholdings; or (b) produce the requested records or demonstrate that the requested records are lawfully exempt from production. Through Defendants' failure to respond to American

16

Oversight's FOIA requests within the time period required by law, American Oversight has

exhausted its administrative remedies and now seeks immediate judicial review.

44.    Furthermore, Defendant Education has failed to grant American Oversight's

proper request for expedited processing of its FOIA request.

45.    American Oversight is not required to exhaust its administrative remedies with

respect to the adverse determination on its request to expedited processing of the Education

FOIA.

**COUNT I – as to all Defendants**
**Violation of FOIA, 5 U.S.C. § 552**
**Failure to Conduct Adequate Searches for Responsive Records**

46.    American Oversight repeats the allegations in the foregoing paragraphs and

incorporates them as though fully set forth herein.

47.    American Oversight properly requested records within the possession, custody,

and control of Defendants.

48.    Defendants are agencies subject to and within the meaning of FOIA, and they

must therefore make reasonable efforts to search for requested records.

49.    Defendants have failed to promptly and adequately search for records responsive

to American Oversight's FOIA requests.

50.    Defendants' failures to conduct adequate searches for responsive records violate

FOIA.

51.    Plaintiff American Oversight is therefore entitled to injunctive and declaratory

relief requiring Defendants to promptly make reasonable efforts to search for records responsive

to American Oversight's FOIA requests.

**COUNT II – as to all Defendants**
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Withholding of Non-Exempt Responsive Records**

52.     American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

53.     American Oversight properly requested records within the possession, custody, and control of Defendants.

54.     Defendants are wrongfully withholding non-exempt agency records requested by American Oversight by failing to produce non-exempt records responsive to its FOIA requests.

55.     Defendants are wrongfully withholding non-exempt agency records requested by American Oversight by failing to segregate exempt information in otherwise non-exempt records responsive to American Oversight's FOIA requests.

56.     Defendants' failure to provide all non-exempt responsive records violates FOIA.

57.     Plaintiff American Oversight is therefore entitled to declaratory and injunctive relief requiring Defendants to promptly produce all non-exempt records responsive to its FOIA requests and provide indexes justifying the withholding of any responsive records withheld under claim of exemption.

**COUNT III – as to Defendant Education**
**Violation of FOIA, 5 U.S.C. § 552**
**Failure to Grant Expedited Processing**

58.     American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

59.     Education is an agency subject to FOIA and must process FOIA requests on an expedited basis pursuant to the requirements of FOIA and agency regulations.

18

60. The records American Oversight has requested in the Education FOIA are urgently needed to inform the public about government activities of extraordinary public importance, and American Oversight is primarily engaged in disseminating information to the general public. Therefore, American Oversight's request justifies expedited processing under FOIA and agency regulations.

61. American Oversight is therefore entitled to declaratory and injunctive relief requiring Education to grant expedited processing of American Oversight's FOIA request.

## **REQUESTED RELIEF**

WHEREFORE, American Oversight respectfully requests the Court to:

(1) Order Defendant Education to process Plaintiff's Education FOIA on an expedited basis;

(2) Order Defendants to conduct a search or searches reasonably calculated to uncover all records responsive to American Oversight's FOIA requests;

(3) Order Defendants to produce, within 20 days of the Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to American Oversight's FOIA requests with indexes justifying the withholding of any responsive records withheld under claim of exemption;

(4) Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to American Oversight's FOIA requests;

(5) Award American Oversight the costs of this proceeding, including reasonable attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(6) Grant American Oversight such other relief as the Court deems just and proper.

19

Dated: May 19, 2025                    Respectfully submitted,

<u>*/s/ Emma Lewis*</u>
Emma Lewis
D.C. Bar No. 144574
Elizabeth Haddix
D.C. Bar No. 90019750
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 919-6303
emma.lewis@americanoversight.org
elizabeth.haddix@americanoversight.org
*Counsel for Plaintiff*